IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHERLENE K. GUDALEFSKY, | : | |
| | : | |
| Plaintiff, | : | No.  4:05-CV-867 |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| TRANSPORTATION, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

## January 29, 2007

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Pending before this Court is a Motion to Dismiss Plaintiff's Complaint, ("Motion to Dismiss") filed by Defendant, the Pennsylvania Department of Transportation ("Defendant" or "DOT"), on August 15, 2006.  (Rec. Doc. 9).  For the reasons that follow, the Motion to Dismiss shall be construed as a Motion for Summary Judgment, pursuant to Rule 12(6)(6) of the Federal Rules of Civil Procedure, and granted.

## PROCEDURAL HISTORY:

On April 29, 2005, pro se Plaintiff Cherlene Gudalefsky ("Plaintiff or "Gudalefsky") filed a Complaint in the above-captioned action.  (Rec. Doc. 1).  On

1

July 12, 2005, Defendant filed an Answer.  (Rec. Doc. 8).

On August 15, 2006, Defendant filed a Motion to Dismiss.  (Rec. Doc. 9).
In response, this pro se Plaintiff filed a submission entitled "Motion," on August
29, 2006.  (Rec. Doc. 10).  On August 31, 2006, Defendant filed a Brief in Support
of the Motion to Dismiss that included matters outside of the Complaint.  (Rec.
Doc. 11).

On November 21, 2006, Plaintiff filed a submission entitled "Briefs."  (Rec.
Doc. 13).  In turn, on December 6, 2006, Defendant filed a Reply Brief.  (Rec.
Doc. 14).

Because Defendant's Brief in Support of the Motion to Dismiss (doc. 11)
included matters outside of the Complaint (doc. 1), on December 20, 2006, this
Court entered an Order indicating its intention to construe the Motion to Dismiss as
a Motion for Summary Judgment and directing Plaintiff to file any materials in
opposition to the Motion for Summary Judgment within ten (10) days of the
Order's entry.  (Rec. Doc. 15).

Accordingly, on December 29, 2006, Plaintiff filed a "Petition" and a
"Brief."  (Rec. Docs. 16, 17).  We will construe these two submissions, as well as
Plaintiff's August 29, 2006 and November 21, 2006 filings, collectively, as
Plaintiff's Brief in Opposition to the instant Motion for Summary Judgment.

2

## STANDARD OF REVIEW:

Defendant's Motion was originally styled as a Motion to Dismiss.  (Rec. Doc. 9).  However, Defendant's subsequent submissions (docs. 11, 12, 14) include matters outside of the pleadings.  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides:

> [i]f, on a motion asserting the defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED. R. CIV. P. 12(b)(6).  Accordingly, on December 20, 2006, pursuant to Rule 12(b)(6) and as required by Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989), this Court entered an Order indicating its intention to construe the Motion to Dismiss as a Motion for Summary Judgment ("the Motion") and directing Plaintiff to file any materials in opposition to the Motion within ten (10) days of the Order's entry.[1] (Rec. Doc. 15).

Thus, in disposing of the instant Motion, we apply the standard of review for a Motion for Summary Judgment.

---

[1] Because we have construed Defendant's Motion to Dismiss (doc. 9) as a Motion for Summary Judgment, we need not consider whether the filing thereof after Defendant's Answer (doc. 8) would render it more properly titled a Motion for Judgment on the Pleadings pursuant to Rule 12(h)(2) of the Federal Rules of Civil Procedure.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).  Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them.  See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial.  See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  See FED. R. CIV. P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient

showing as to the essential elements of their case that a reasonable jury could find in its favor.  See Celotex, 477 U.S. at 322-23 (1986).

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)(citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "As to materiality, the substantive law will identify which facts are material."  Id. at 248.  A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

## FACTUAL BACKGROUND:

We initially note that despite our December 20, 2006 Order (doc. 15)

providing Plaintiff: 1) notice of our intention to construe the pending Motion as one for Summary Judgment; and 2) ten (10) days in which to "'to submit pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits to support or oppose the motion for summary judgment,'" (doc. 15 at 3 (quoting Rose, 871 F.2d at 340 (internal quotations omitted))), Plaintiff has failed to file any such documentation.  Rather, all four (4) of Plaintiff's submissions responding to the instant Motion have been unsigned and are most charitably construed collectively as a Brief in Opposition to the instant Motion.  As Plaintiff has not submitted any evidentiary materials to support her allegations and Defendant has provided a Statement of Material Facts to which it has appended eight (8) Exhibits, totaling fifty-six (56) pages, we will set forth the undisputed facts contained therein.

In March 1998, Plaintiff was employed as a Clerk Typist with DOT in the Bureau of Office Services.  (Rec. Doc. 12, ¶ 1; Exh. A).

On March 17, 1998, Plaintiff filed a request for accommodation under the Americans with Disabilities Act ("ADA").  (Rec. Doc. 12, ¶ 2; Exh. A). Additionally, on March 27, 1998, Plaintiff wrote a letter to an Equal Opportunity Representative claiming discrimination.  (Rec. Doc. 12, ¶ 3; Exh. B).  However, on April 7, 1998, Plaintiff's ADA accommodation request was granted by DOT.

(Rec. Doc. 12, ¶ 4; Exh. C).

A May 1998 audit conducted by DOT determined that although Plaintiff was currently classified as Clerk Typist 3, she was actually doing the work of a Clerk Typist 2.  (Rec. Doc. 12, ¶ 5; Exh. D).  Accordingly, on July 23, 1998, Plaintiff was notified in writing that she was being reclassified as a Clerk Typist 2, but that her salary would not be decreased.  (Rec. Doc. 12, ¶ 6; Exh. E).

On August 10, 1998, a Clerk Typist 3 position became available in the Motor Vehicles Division, which Plaintiff applied for and received because she had the most seniority of all applicants.  (Rec. Doc. 12, ¶ 7; Exh. F-1).  Plaintiff was promoted despite an August 17, 1998 Employee Performance Review ("EPR") in which, out of six (6) categories of evaluation, she received one (1) "satisfactory" rating, four (4) "needs improvement" ratings, and one (1) "unsatisfactory" rating. (Rec. Doc. 12, ¶ 9; Exh. F-2).  Plaintiff's August 17, 1998 EPR apparently led Plaintiff to file an initial Complaint with the Pennsylvania Human Relations Commission ("PHRC") on August 18, 1998, in which she alleged discrimination based on her ADA disability.  (Rec. Doc. 12, ¶ 10; Exh. F-10, ¶ (a)(1)).

However, on November 6, 1998, Plaintiff was notified in writing that she was to be promoted to a Clerk Typist 3 position effective October 17, 1998, and that she would serve a six (6) month probationary period.  (Rec. Doc. 12, ¶ 11;

7

Exh. F-3).  When Plaintiff started her new position as a Clerk Typist 3, she moved

from the Bureau of Office Services to the Motor Vehicles Division, located in a

different building from that in which she had been working.  (Rec. Doc. 12, ¶ 12;

Exh. F).

The standard training procedure for individuals in a Clerk Typist 3 position

is that they begin by learning how to properly process titles.  (Rec. Doc. 12, ¶ 13;

Exh. F).  After they have become proficient in processing titles, they are then

trained how to process license renewals.  (Rec. Doc. 12, ¶ 13; Exh. F).  Although

more paperwork is involved in processing titles, processing license renewals is

considered to be a more complex task.  (Rec. Doc. 12, ¶ 14; Exh. F).  Following

this training, individuals employed as Clerk Typists 3 have a quota of twelve (12)

pieces of title work per hour.  (Rec. Doc. 12, ¶ 15; Exh. F).

Because Plaintiff was not provided formal training for her new position upon

the commencement of her work in that position, her probationary period was

extended until July 14, 1999 in order to give her adequate time to meet the

departmental quota.  (Rec. Doc. 12, ¶ 18; Exhs. F-5, F-6).  Despite the extension of

Plaintiff's probationary period, Plaintiff's job performance was unsatisfactory.

(Rec. Doc. 12, ¶ 19; Exh. F-7).  An EPR, signed by Kennedy Tripp, Plaintiff's

immediate supervisor during her time at the Motor Vehicles Division, and dated

8

June 1, 1999, indicates that from May 1999 until June 1999, Plaintiff's output averaged three (3) or four (4) pieces of title work per hour.  (Rec. Doc. 12, ¶ 16; Exh. F-7).

Accordingly, on June 29, 1999, Plaintiff was notified in writing that she was being returned to her former classification as a Clerk Typist 2 because of her poor job performance.  (Rec. Doc. 12, ¶ 20; Exh. F-8).  On July 9, 1999, Plaintiff resigned her position at DOT, claiming that she was doing so because of intolerable working conditions, her health, and uncalled for hostile discrimination practices.  (Rec. Doc. 12, ¶ 21; Exh. F-9).

On July 29, 1999, Plaintiff filed a second Complaint with the PHRC, claiming that her demotion and poor evaluations were retaliation for her filing of the August 18, 1998 PHRC Complaint.  (Rec. Doc. 12, ¶ 22; Exh. F-10).

However, on November 12, 1999, Tripp filed a sworn affidavit in response to Plaintiff's July 29, 1999 PHRC Complaint.  (Rec. Doc. 12, ¶ 23; Exh. F-11).  Within Tripp's aforementioned affidavit, he states that he had no knowledge of Plaintiff's August 18, 1998 PHRC Complaint.  (Rec. Doc. 12, ¶ 24; Exh. F-11).  He further states that he had "no knowledge of _any_ previous complaints filed by Ms. Gudalefsky with the PHRC."  (Rec. Doc. 12, Exh. F-11 (emphasis added)).

**DISCUSSION:**

Construed liberally, this pro se Plaintiff's Complaint alleges that DOT

retaliated against her for her filing of the August 18, 1998 PHRC Complaint.  (Rec.

Doc. 1).  Specifically, Plaintiff alleges that her receipt of a poor EPR on June 1,

1999 and subsequent demotion were retaliation for the filing of the aforementioned

PHRC Complaint.  (Rec. Docs. 10, 13, 16, 17).

As Defendant accurately indicates (doc. 11 at 7),

> [t]o state a First Amendment retaliation claim, a plaintiff must allege two
> things: (1) that the activity in question is protected by the First Amendment,
> and (2) that the protected activity was a substantial factor in the alleged
> retaliatory action.  The first factor is a question of law; the second factor is a
> question of fact.

Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006) (internal citations

omitted).  However, "[a] defendant may defeat [a] plaintiff's retaliation claim by

demonstrating that the defendant would have taken the same adverse action in the

absence of plaintiff's protected conduct."  Id. at n.23 (citing Mt. Healthy City Sch.

Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

In the instant Motion, Defendant contends that the instant action should be

dismissed because the supervisor responsible for Plaintiff's June 1, 1999 EPR and

Plaintiff's subsequent demotion had no knowledge of Plaintiff's August 18, 1998

PHRC Complaint, and, thus, his knowledge thereof could not prompted her poor

EPR and resulting demotion.  (Rec. Doc. 11 at 2, 8).  Moreover, Defendant

provides ample evidence that Plaintiff's poor EPR and subsequent demotion were justified and for cause.  (Rec. Doc. 12, Exhs. F, F-5, F-6, F-7, F-8).

Because of our intention to construe Defendant's instant Motion as one for Summary Judgment, in the interest of caution, on December 20, 2006, we provided Plaintiff: 1) notice of said intention; and 2) ten (10) days in which to "'to submit pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits to support or oppose the motion for summary judgment.'"  (Rec. Doc. 15 at 3 (quoting <u>Rose</u>, 871 F.2d at 340 (internal quotations omitted))).

Indeed, a non-moving party's responsibilities upon the filing of a motion for summary judgment are well-established.  The Supreme Court has stated that "[w]hat Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him."  <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 252, 289 (1968).  Indeed, more recently, the Supreme Court has held:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden

11

of proof.  "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . . ."

Celotex Corp., 477 U.S. at 322-23.

Viewed in light of First Nat'l Bank, 391 U.S. at 289, and Celotex Corp., 477 U.S. at 322-23, Plaintiff's responses to our December 20, 2006 Order are woefully inadequate.  First, Plaintiff failed to file any documentation suggesting that she undertook discovery in this matter.  Second, all four (4) of Plaintiff's submissions responding to the instant Motion have been unsigned, rendering them incapable of constituting affidavits in opposition to the instant Motion.  Thus, Plaintiff has produced no materials to counter Defendant's arguments that 1) the supervisor responsible for her June 1, 1999 EPR and subsequent demotion knew nothing about her August 18, 1998 PHRC Complaint and 2) that Plaintiff's poor EPR and subsequent demotion were justified.  Accordingly, Plaintiff simply cannot show that her initial PHRC Complaint was a substantial factor in DOT's employment actions with regard to her.  Hill, 455 F.3d at 241.

We further note that as indicated above, Plaintiff's instant action has been on our docket for more than twenty (20) months.  Upon the filing of actions such as these, plaintiffs have both the right and the responsibility to proceed with discovery in order to support the allegations set forth in their complaints.  (Rec. Doc. 1).

Although we recognize that this Plaintiff is pro se, the right and obligation to conduct discovery remains.  Plaintiff's responses to our December 20, 2006 Order, make it apparent to this Court that Plaintiff has conducted very little, if any, discovery in order to facilitate her prosecution of this action.

Under these circumstances, and in light of Defendant's undisputed factual allegations that the supervisor responsible for Plaintiff's June 1, 1999 EPR and subsequent demotion had no knowledge of the PHRC Complaint and that Plaintiff was demoted for cause, we see no reason not to grant the instant Motion. Accordingly, we will grant Defendant's Motion for Summary Judgment in its entirety: Plaintiff's action will be dismissed.

An appropriate Order shall issue.